[COMMENT1] 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO. 2-07-437-CR

 

 

RANCE DUANE SHELTON                                                     APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

              FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

        ON STATE=S PETITION FOR DISCRETIONARY REVIEW

 

                                              ------------

After
reviewing the State=s petition for discretionary
review, we modify our opinion and judgment in this appeal.  See Tex. R. App. P. 50.  We withdraw our December 18, 2008 opinion and
judgment and substitute the following.

                                           I.
INTRODUCTION








Appellant
Rance Duane Shelton appeals his conviction for possession of a controlled
substance, over one gram.  In a single
point, Shelton claims the trial court erred by denying his motion to suppress.  We will reverse.

                          II. FACTUAL
AND PROCEDURAL BACKGROUND

Troopers
Kristopher Hall and Shane Neal pulled over Shelton because his car did not have
a front license plate.  The stop was
videotaped by a camera in the officers= vehicle
and introduced in evidence at the hearing on Shelton=s motion
to suppress.








At the suppression hearing, Trooper Hall
testified that Shelton appeared excessively nervous throughout the stop.  When he asked if Shelton had insurance, he
said Athey@ did but
did not give any proof of insurance to the officer or look for any inside the
vehicle.  Shelton initially said the car
belonged to his wife, but later said that it belonged to Tom McClendon.  The officer testified that after he gave
Shelton a citation and returned his driver=s
license, he asked Shelton Aif he
would mind if I made sure there wasn=t
anything illegal in the vehicle.@  Shelton Adidn=t say, >Yes,= he didn=t say >No,@ but
responded that he did not want to be harassed. 
The officer testified that after explaining to Shelton that he was not
harassing him and why he was suspicious, A[i]t
didn=t seem
like I was going to get an answer one way or the other, so rather than continue
in the course and re-explain everything a third time as to why I was
suspicious, I removed the hand-held radio from my side, began to contact Hood
County.@  He was about to request a K-9 unit but before
he could do so, Shelton said, AGo ahead
and look.@ 
Trooper Hall testified that Shelton did not limit the scope of his
consent to search.

Shelton also testified at the suppression
hearing.  He said that he never
voluntarily agreed to let Trooper Hall search his car.  Shelton testified, AActually
what I C I
thought I said was, >Okay, I=ll open
the trunk= is what I heard myself say.@








The videotape of the stop, which was played for
the court at the suppression hearing, shows that the second time Trooper Hall
asked if there was anything illegal in the car, Shelton said he would open the
glove box if he wanted him to.  Trooper
Hall said, AWell hang on@ and
asked if it was alright if he made sure there was nothing illegal in the
car.  Shelton responded, ANo sir,
I don=t have
any drugs in the car.  I=ll show
you.@  The officer explained that it would be safer
if he looked for himself and asked if there was something Shelton did not want
him to see.  Shelton answered that there
was not but that he did not like to be searched and that he did not want to be
harassed.  A review of the videotape
shows that as Trooper Hall took out his handheld radio to call dispatch,
Shelton said, AGo ahead.  Look. 
I=ll open
up the trunk.@ 
They were standing in front of the trunk of Shelton=s
car.  The officer stepped backwards away
from the trunk, and Shelton said, AI was
going to open up the trunk.@  Trooper Hall asked Shelton if his partner
could Apat
[him] down real quick,@ and he walked to the driver=s side
of the car as Trooper Neal patted down Shelton. 
A search of the glove box of the car revealed methamphetamine.

                                     III.
MOTION TO SUPPRESS

In his sole point, Shelton argues that the trial
court erred by denying his motion to suppress because the evidence was not
clear and convincing that he gave positive and unequivocal consent to search
the glove box of the car.  Shelton
contends that he purported to limit the scope of his consent to only the trunk
of the car and that, consequently, the officers exceeded the scope of his
consent.

                                     A.  STANDARD OF REVIEW








We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24B25 (Tex.
Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).  Therefore, we
give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex.
Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s
rulings on those questions de novo.  Amador,
221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim.
App. 2005); Johnson, 68 S.W.3d at 652B53.








Stated another way, when reviewing the trial
court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  Wiede, 214 S.W.3d at 24; State v.
Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the record is silent on the reasons for
the trial court=s ruling, or when there are no
explicit fact findings and neither party timely requested findings and
conclusions from the trial court, we imply the necessary fact findings that
would support the trial court=s ruling
if the evidence, viewed in the light most favorable to the trial court=s
ruling, supports those findings.  Kelly,
204 S.W.3d at 819; see Amador, 221 S.W.3d at 673; Wiede, 214
S.W.3d at 25.  We then review the trial
court=s legal
ruling de novo unless the implied fact findings supported by the record are
also dispositive of the legal ruling.  Kelly,
204 S.W.3d at 819.

                                      B.  SCOPE OF CONSENT

Consent to search is one of the well-established
exceptions to the constitutional requirements of both a warrant and probable
cause.  Carmouche v. State, 10
S.W.3d 323, 331 (Tex. Crim. App. 2000) (citing Schneckloth v. Bustamonte,
412 U.S. 218, 219, 93 S. Ct. 2041, 2043B44
(1973)).  To be valid, a consent to
search must be positive and unequivocal and must not be the product of duress
or coercion, either express or implied.  Allridge
v. State, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991), cert. denied,
510 U.S. 831, 114 S. Ct. 101 (1993).  The
trial court must look at the totality of the circumstances surrounding the
statement of consent in order to determine whether consent was given
voluntarily.  Reasor v. State, 12
S.W.3d 813, 818 (Tex. Crim. App. 2000). 
The federal constitution requires the State to prove voluntary consent
by a preponderance of the evidence, but the Texas constitution requires proof
by clear and convincing evidence.  Carmouche,
10 S.W.3d at 331.








Even when an individual voluntarily consents to a
search, an officer=s authority to perform the
search is not without limit.  May v.
State, 582 S.W.2d 848, 851 (Tex. Crim. App. [Panel Op.] 1979).  The extent of the search is limited to the
scope of the consent given.  Florida
v. Jimeno, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803B04
(1991); May, 582 S.W.2d at 851. 
The standard for measuring the scope of a suspect=s
consent under the Fourth Amendment is that of objective reasonableness, i.e.,
what the typical reasonable person would have understood from the exchange
between the officer and the suspect.  Jimeno,
500 U.S. at 251, 111 S. Ct. at 1803B04; Simpson
v. State, 29 S.W.3d 324, 330 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d).  The question is not to be determined on the
basis of the subjective intentions of the consenting party or the subjective
interpretation of the searching officer. 
United States v. Mendoza‑Gonzalez, 318 F.3d 663, 667 (5th
Cir.), cert. denied, 538 U.S. 1049, 123 S. Ct. 2114 (2003) (citing Wayne
R. LaFave, Search and Seizure ' 8.1(c)
(3d ed. 1996 & Supp. 2003)).








AIf the consent to search is
entirely open‑ended, a reasonable person would have no cause to believe
that the search will be limited in some way.@  Id. at 670 (quoting United States
v. Snow, 44 F.3d 133, 134B35 (2d
Cir. 1995)).  When an officer
specifically asks a suspect if he can search a vehicle for illegal contraband,
and the suspect answers affirmatively, a reasonable person would construe the
consent to extend to any area of the vehicle in which such objects could be concealed.  Simpson, 29 S.W.3d at 330.  If an officer makes a general request to
search and the individual consents, knowing that there are unlocked containers
in the car, the individual should expressly limit her consent to the vehicle
but not the containers or, at the very least, object when the officer begins to
open the container.  Mendoza‑Gonzalez,
318 F.3d at 667.  The State has the
burden of showing that the search was conducted within the scope of the consent
received.  Malone v. State, 163
S.W.3d 785, 798 n.6 (Tex. App.CTexarkana
2005, pet. ref=d).








In this case, we have reviewed the videotape of
the stop multiple times.  It reveals that
Shelton did not immediately answer Trooper Hall=s
requests to search his car and that eventually, and not directly in response to
a question, Shelton said, AGo
ahead. Look.  I=ll open
up the trunk.@ 
Certainly if Shelton had stopped with AGo
ahead.  Look,@ his
consent would have extended to the glove box of the car.  See, e.g., United States v. McSween,
53 F.3d 684, 688 (5th Cir.), cert. denied, 516 U.S. 874, 116 S. Ct. 199
(1995) (holding that consent to Alook in@ a car
included area under hood); Cannon v. State, 29 F.3d 472, 477 (2d Cir.
1994) (noting, in holding that defendant=s answer
to Ago ahead@ and
look in car justified search of trunk, that failure to object to continued
search of vehicle after giving general consent to search is an indication that
search was within scope of initial consent); Caraway v. State, 255
S.W.3d 302, 310 (Tex. App.CEastland
2008, no pet.) (holding scope of search extended to back trunk area of vehicle
when defendant consented to a Alook@ inside
his car).  But the videotape shows that
Shelton did not leave his consent open-ended. 
As he and Trooper Hall stood at the end of the vehicle near the trunk,
Shelton continued and said, AI=ll open
up the trunk,@ and further explained as
Trooper Hall walked away from the trunk of the vehicle, AI was
going to open up the trunk.@  Contrary to the videotape, Trooper Hall
testified that Shelton=s response was only, AGo ahead.  Look,@ and
that Shelton did not limit his consent.








The State was required to prove by clear and
convincing evidence that Shelton=s
consent to a search of the interior of the vehicle was both positive and
unequivocal; in other words, that Shelton left no doubt that he had consented
to the search and that his words expressing his consent were, viewing the
totality of the circumstances, capable of only one reasonable
interpretation.  See Reasor,
12 S.W.3d at 818; Allridge, 850 S.W.2d at 493; see also Webster=s Third
New International Dictionary 2494 (2002) (defining the term Aunequivocal@).  But a reasonable person standing at the rear
of Shelton=s vehicle near the trunk could
have interpreted Shelton=s statements that he would open
up the trunk and that he was going to open up the trunk as a limitation to his
consent to search, authorizing a search only of the trunk.  See Thomas v. State, No. 14‑99‑00949‑CR,
2000 WL 1785110, at *4 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d) (not
designated for publication) (holding that appellant=s
statement to A[j]ust go@ in
response to officer=s consent to search was
equivocal in that a rational person might interpret it as permission to Ago ahead
and search@ or that she wanted the police
out of her home); see also Reyes‑Perez v. State, 45 S.W.3d 312,
319 (Tex. App.CCorpus Christi 2001, pet. ref=d)
(holding that officers= testimony that they
communicated with appellant solely by Ahand
gestures@ was
insufficient to constitute clear and convincing evidence of appellant=s
positive and unequivocal consent to the search).  Contra Mendoza-Gonzalez, 318 F.3d at
667 (in upholding search, noting that defendant=s decision
not to place any limitations in his response to officers= general
request is evidence of general consent to search).








We apply a deferential standard of review to the
trial court=s determination of historical
facts, even when that determination is based on a videotape.  See Montanez, 195 S.W.3d at 109.  But this standard does not require that we
disregard the videotape entirely when it does not support the trial court=s
ruling; the trial court could not find facts that the record would not support.  See id. (AThe
issue is whether, after affording almost total deference to the trial court=s
determination of historical facts that are supported by the record, the
trial court abused its discretion by finding that the State proved by clear and
convincing evidence that Montanez voluntarily consented to the search of the
vehicle.@)
(emphasis added).  And this standard does
not require that we defer to the trial court=s
misapplication of the law to the facts; a trial court does not have discretion
to misapply the law.  See Fink v.
State, No. 06‑99‑00149‑CR, 2000 WL 1059492, at *3 (Tex.
App.CTexarkana
Aug. 3, 2000, pet. ref=d) (not designated for
publication).

Even after affording almost total deference to
the trial court=s determination of historical
facts that are supported by the record, we cannot hold that the trial court
acted within its discretion by finding that the State proved by clear and
convincing evidence that Shelton positively and unequivocally consented to more
than a search of his trunk.  See
Montanez, 195 S.W.3d at 108; Allridge, 850 S.W.2d at 493.  The State proffered no theory, other than
Shelton=s
consent, justifying the warrantless search of the interior of Shelton=s
vehicle.  Consequently, we hold that the
trial court abused its discretion by denying Shelton=s motion
to suppress.

                                              C.  HARM








Having found an abuse of discretion, we must
conduct a harm analysis to determine whether the error calls for reversal of
the judgment.  Tex. R. App. P. 44.2.  Because the error involved is of
constitutional magnitude, we apply rule 44.2(a) and reverse unless we determine
beyond a reasonable doubt that the error did not contribute to Shelton=s
conviction or punishment.  Tex. R. App.
P. 44.2(a); Hernandez v. State, 60 S.W.3d 106, 108 (Tex. Crim. App.
2001).  The question is whether the trial
court=s error
in denying Shelton=s motion to suppress was
harmless beyond a reasonable doubt.  See
Williams v. State, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997).  In applying the Aharmless
error@ test,
our primary question is whether there is a Areasonable
possibility@ that the error might have
contributed to the conviction.  Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999).

The only evidence that Shelton possessed
methamphetamine came from the search of the interior of Shelton=s
vehicle, specifically Shelton=s glove
box.  We are thus unable to determine
beyond a reasonable doubt that the trial court=s error
in denying Shelton=s motion to suppress did not
contribute to Shelton=s conviction or punishment for
possession of more than one gram of methamphetamine.  See Williams, 958 S.W.2d at 195.  We sustain Shelton=s sole
point.

                                          IV.
CONCLUSION








Having sustained Shelton=s sole
point, we reverse the trial court=s order
denying his motion to suppress and remand to the trial court for further
proceedings consistent with this opinion.

 

SUE
WALKER

JUSTICE

 

PANEL: DAUPHINOT, WALKER,
and MCCOY, JJ.

 

DAUPHINOT, J. filed a
concurring opinion.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: March 5, 2009











 
 
 
 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-437-CR

 

 

RANCE
DUANE SHELTON                                                     APPELLANT

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

              FROM THE 355TH
DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

         CONCURRING MEMORANDUM
OPINION[1] ON STATE=S

                 PETITION FOR
DISCRETIONARY REVIEW

 

                                              ------------

I write separately only to emphasize my agreement
with the majority opinion.  At least
since Bumper v. North Carolina, we have been reminded of that which is a
cornerstone of the constitutional protections guaranteed by the Bill of Rights:
coerced consent is no consent at all.[2]  The warrantless search resulting from coerced
consent is, therefore, unreasonable.








When the validity of a search rests upon consent,
the State bears the burden of proving that the consent was obtained and that it
was freely and voluntarily given.[3]  That burden is not satisfied by showing a
mere submission to a claim of lawful authority.[4]  As the Texas Court of Criminal Appeals
explained in the Sixth Amendment context, courts indulge every reasonable
presumption against waiver of a fundamental constitutional right.[5]

In the case now before this court, Appellant
refused to consent to the officer=s
request to search his car.  The officer
clearly understood that Appellant was refusing to consent because he repeatedly
asked why Appellant would not let him search the car.  Then the other officer came up and stood
beside the first officer, both much bigger than Appellant, and, standing
together, they created an imposing force. 
The officer continued to demand consent to search the car, explaining
that a person with nothing to hide would permit the search.








When a defendant invokes his Fifth Amendment
rights, the matter is settled, and only the defendant may initiate a waiver of
those rights.[6]  The same is true when a defendant invokes his
Sixth Amendment rights.[7]  Here, Appellant invoked his Fourth Amendment
right to be secure in his person, papers, and effects.[8]  Yet the officers continued to press and to
demand that he give up that right and consent to an unlimited search of his car
and everything within it.  They finally
overbore his will, and he gave in, but only to the extent that he said they
could search the trunk.  In Bumper,
the consent was held to be involuntary because the officers claimed that they
could get a warrant.[9]  Here, Appellant finally gave in to two
officers who refused to accept his invocation of his Fourth Amendment
rights.  By no stretch of the imagination
could his consent be construed as voluntary and uncoerced.  I therefore wholeheartedly join the majority=s
decision.

 

LEE
ANN DAUPHINOT

JUSTICE

 








DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: March 5, 2009











[1]See Tex. R. App. P. 47.4.





[1]See Tex. R. App. P. 47.4.





[2]391 U.S. 543, 548B49, 88 S. Ct. 1788, 1791B92 (1968).





[3]Gutierrez v. State, 221 S.W.3d 680, 686
(Tex. Crim. App. 2007).





[4]Florida v. Royer, 460 U.S. 491, 497, 103
S. Ct. 1319, 1324 (1983) (citing Lo‑Ji Sales, Inc. v. New York,
442 U.S. 319, 329, 99 S. Ct. 2319, 2326 (1979); Schneckloth v. Bustamonte,
412 U.S. 218, 233B34, 93 S. Ct. 2041, 2050B51 (1973); Bumper,
391 U.S. at 548B49, 88 S. Ct. at 1791B92; Johnson v. United
States, 333 U.S. 10, 13, 68 S. Ct. 367, 368 (1948); Amos v. United
States, 255 U.S. 313, 317, 41 S. Ct. 266, 268 (1921)).





[5]Williams v. State, 252 S.W.3d 353, 356
(Tex. Crim. App. 2008) (citing Johnson v. Zerbst, 304 U.S. 458, 464B65, 58 S. Ct. 1019, 1023
(1938)).





[6]Edwards v. Arizona, 451 U.S. 477, 484B85, 101 S. Ct. 1880, 1884B85 (1980); Pecina v.
State, 268 S.W.3d 564, 567B69 (Tex. Crim. App. 2008).





[7]Michigan v. Jackson, 475 U.S. 625, 634B36, 106 S. Ct. 1404, 1410B11 (1985); Pecina,
268 S.W.3d at 567B69.





[8]See U.S. Const. amend. IV.





[9]Bumper, 391 U.S. at 548B50, 88 S. Ct. at 1791B92.















 [COMMENT1]

Majority Opinion on PDR by Justice Walker;
Concurring Opinion on PDR by Justice Dauphinot